**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEIL L. SCLATER-BOOTH, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SCOR, S.A., and PATINEX AG, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action  No. 07-CV-3476 (GEL) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## FINAL APPROVAL OF SETTLEMENT

**WEISS & LURIE**
Joseph H. Weiss (JW-4534)
James E. Tullman (JT-9597)
David C. Katz (DK-6235)
551 Fifth Avenue
New York, NY  10176
Tel.:  (212) 682-3025
Fax:  (212) 682-3010

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky (SR-9430)
Brian D. Long
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel.:  (302) 295-5310
Fax:  (302) 654-7530

*Counsel for Plaintiff and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Proposed Settlement Is Fair, Reasonable And Adequate And
        Should Be Approved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.  Standards for Approval of a Class Action Settlement . . . . . . . . . . . . . . . 4

        2.  Application of the *Grinnell* Factors Supports Approval of the
            Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            a.  The Complexity, Expense and Likely Duration of the
                Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            b.  The Response of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            c.  The Stage of the Proceedings and Amount of Discovery
                Completed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            d.  Risks Involved in Establishing Liability and Damages,
                and in Maintaining the Class Action Through Trial . . . . . . . . . . 10

        3.  The Proposed Settlement is the Product of Informed Arm's-
            Length Negotiations and is Presumptively Fair . . . . . . . . . . . . . . . . . . . 13

    B.  The Court Should Certify The Class For Purposes Of The Settlement . . . . . . . . 14

        1.  Standards for Class Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.  Rule 23(a)(1): The Class is Numerous . . . . . . . . . . . . . . . . . . . . . . . . . 15

        3.  Rule 23(a)(2): Questions of Law or Fact are Common to the Class . . . . 15

        4.  Rule 23(a)(3): Plaintiff's Claims are Typical of the Claims of
            other Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        5.  Rule 23(a)(4): The Proposed Class Representative will Adequately
            Protect the Interests of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6.      Certification under F.R.C.P. 23(b)(1) and (b)(2) is Proper . . . . . . . . . . 18

7.      Counsel for Plaintiff should be Appointed Class Counsel under
Rule 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re American Bank Note Holographics, Inc. Sec. Litigation,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................... 4, 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
  ( 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................... 10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) ....................................................................... 17

*In re Citigroup Pension Plan ERISA Litigation,*
  241 F.R.D. 172 (S.D.N.Y. 2006) .............................................................. 18

In *City of Detroit v. Grinnell Corp.,*
  495 F.2d 448, 463 (2d Cir. 1974) ....................................................... *passim*

*Consolidated Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ....................................................................... 15

*In re Deutsche Telekom AG Sec. Litig.,*
  229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002) .............................................. 16

*Dietrich v. Bauer,*
  192 F.R.D. 119 (S.D.N.Y. 2000) .............................................................. 15

*In re Drexel Burnham Lambert Group Inc.,*
  130 B.R. 910 (S.D.N.Y. 1991) ................................................................... 6

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,*
  55 F.3d 768 (3d Cir. 1995) ....................................................................... 11

*In re Global Crossing Sec. & Erisa Litigation,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................... 4, 9, 10, 15

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  210 F.R.D. 476 (S.D.N.Y. 2002) ......................................................... 15, 16

*Maley v. Del Global Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................ 4, 6, 8, 9

*Manual for Complex Litigation, Third* ¶ 30.42 (1995) 189,
  F.R.D. at 280-81 (emphasis in original) ................................................................ 13

*Maywalt v. Parker & Parsley Petroleum Co.,*
  67 F.3d 1072 (2d Cir. 1995) ................................................................................. 4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
  209 F.R.D. 323, 336 (S.D.N.Y. 2002) ................................................................... 15

*In re Medical X-Ray Film Antitrust Litigation,*
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ........................................................... 9

*In re Michael Milken & Associates Sec. Litigation,*
  150 F.R.D. 46 (S.D.N.Y. 1993) ....................................................................... 6, 13

*Newman v. Stein,*
  464 F.2d 689, 691-92 (2d Cir. 1972) ..................................................................... 6

*In re NTL Sec. Litig.,*
  2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ......................................................... 15

*In re Oxford Health Plans, Inc. Sec. Litigation,*
  191 F.R.D. 369 (S.D.N.Y. 2000) ..................................................................... 15, 16

*In re Prudential Insurance Co. America Sales Practice Litigation,*
  148 F.3d 283 (3d Cir. 1998) ................................................................................. 7

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ............................................................................... 16

*Slomovics v. All for a Dollar, Inc.,*
  906 F. Supp. 146 (E.D.N.Y. 1995) ....................................................................... 8

*In re Sumitomo Copper Litigation,*
  189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................... 4, 5, 6

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litigation,*
  209 F.R.D. 353 (S.D.N.Y. 2002) ........................................................................ 16

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litigation,*
  718 F. Supp. 1099 (S.D.N.Y. 1989) ..................................................................... 5

*In re Vivendi Universal, S.A. Sec. Litig.,*
  242 F.R.D. 76, 84-85 (S.D.N.Y. 2007 ............................................................ 16, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (3d Cir.), *cert. denied sub nom, Leonardo's Pizza by the Slice, Inc. v.*
   *Wal-Mart Stores, Inc.,* 544 U.S. 1044 (2005) ............................................................ 5

*In re Warner Committee Sec. Litigation,*
   618 F. Supp. 735 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986) ...................... 10

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ............................................................................ 6

*In re WorldCom Sec. Litig.,*
   2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) .......................................... 5

### STATE CASES

*Hynson v. Drummond Coal. Co., Inc.,*
   601 A.2d 570 (Del. Ch. 1991) .................................................................. 18

*Nottingham Partners v. Dana,*
   564 A.2d 1089 (Del. 1989) ...................................................................... 18

*Turner v. Bernstein,*
   768 A.2d 24 (Del. Ch. 2000) ................................................................... 18

### FEDERAL STATUTES

F.R.C.P. 23(b)(1) ........................................................................................ 18

Fed. R. Civ. P. 23 ...................................................................................... 18

Fed. R. Civ. P. 23(a) ................................................................................. 14

Fed. R. Civ. P. 23(a)(2) ............................................................................ 15

Fed. R. Civ. P. 23(b)(3) ............................................................................ 14

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................... 18

Fed. R. Civ. P. 23(g)(1)(B) ....................................................................... 19

## I.  NATURE AND STAGE OF PROCEEDINGS

Plaintiff respectfully submits this Memorandum of Law in support of his application for approval of the proposed settlement (the "Settlement") of this action (the "Action") pursuant to a stipulation and agreement of settlement entered into between the parties (the "Stipulation").[1]

Plaintiff commenced this Action on behalf of holders of the registered shares of Converium Holding AG ("Converium" or the "Company") residing in the United States and holders of the Company's American Depository Shares ("ADS"), against SCOR, S.A. ("SCOR") and Patinex AG ("Patinex"), the entities acquiring Converium.[2]

The Action was brought in response to SCOR's April 5, 2007 announcement that it had made a public tender offer in Switzerland for all publicly held registered shares of Converium.[3] Atty. Decl. ¶ 5.  The Complaint sought injunctive and other appropriate relief on the grounds, *inter alia*, that the Offer was inadequate and unfair in that it, among other things, expressly excluded American shareholders (the "Class"). *Id.*  More specifically, the Complaint alleged that (i) the Offer had triggered the application of the provisions of the Securities and Exchange Act of 1934 (the "Exchange Act") governing tender offers, and that SCOR had violated section 14(d) of the Exchange Act, which requires certain disclosures in connection with tender offers, and section 14(e) of the Exchange Act, which prohibits fraudulent, deceptive, or manipulative acts in

---

[1] Submitted herewith is the Declaration of Seth D. Rigrodsky and Joseph H. Weiss in Support of Final Approval of Settlement and Application for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Attorney Declaration," cited to as the "Attorney Decl." in this Memorandum) and Plaintiff's Memorandum of Law in Support of Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses.  Also filed concomitantly herewith is the Transmittal Affidavit of Brian D. Long in Support of the Proposed Settlement and Application for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Transmittal Affidavit," cited to in the Memorandum as the "Tr. Aff.").

[2] SCOR and Patinex are referred to collectively as "Defendants."

[3] SCOR's tender offer for Converium's publicly held registered shares is referred to herein as the "Offer."

connection with tender offers; and (ii) SCOR and Patinex violated Section 13(d) of the Exchange Act, by failing to disclose that SCOR and Patinex "acted as a group" in connection with the Offer. *Id.*[4]

As set forth more fully in the Attorney Declaration, after extensive pre-filing investigation, Plaintiff moved aggressively and undertook negotiations with representatives of Defendants and their advisors. Atty. Decl. at ¶ 7. As a result of those negotiations, the parties reached an agreement in principle to resolve their disputes over the terms and nature of the Offer, as set forth in the Stipulation, embodying their agreement to settle the Action, subject to Court approval. As a result of such negotiations and other factors, SCOR increased the value of the consideration in the Offer by 7.9% or approximately $259.6 million and the parties reached the proposed settlement, which included the representation, since fulfilled, to acquire the Converium securities owned by Americans at the same price paid to shareholders outside the United States. *Id.* It was only after Plaintiff and Defendants reached agreement on the substantive terms of the Settlement as set forth in the Stipulation that they then conducted arm's-length negotiations concerning the fees to be paid to Plaintiff's Counsel. Atty. Decl. at ¶ 8. These fees and expenses are over and above the consideration paid to the Class and will not impact the amount of that consideration in any way.

After the completion of additional document and oral discovery, the parties promptly informed the Court of the Settlement. Tr. Decl., Ex. 7. Pursuant to the Scheduling Order entered on November 13, 2007, nearly 25,000 copies of the notice of the proposed Settlement have been disseminated to all class members. Atty. Decl. at ¶ 9; Tr. Decl., Ex. 4. To date, Plaintiff and his counsel have received absolutely no objections to the proposed Settlement or to the requested

---

[4] Indeed, the proposed transaction was the subject of an investigation by the U.S. Securities and Exchange Commission and the Swiss Takeover Board, both of whom permitted it to go forward.

attorneys' fees and expenses. Atty. Decl. at ¶ 9. These facts lend great support for the parties' position that the Settlement is fair and reasonable.

As demonstrated below and in the Attorney Declaration, Plaintiff and his counsel have achieved a significant benefit for the Converium's shareholders that was directly related and responsive to the claims and allegations made in the Action. These material benefits fully justify this Court's approval of the proposed Settlement as fair and reasonable and, in conjunction with the extensive and successful services rendered by Plaintiff's Counsel in prosecuting and resolving the Action, merit approval of Plaintiff's Counsel's fee and expense request.

## II.    STATEMENT OF FACTS

The history and background of the Action and the material facts learned in discovery are described in the Attorney Declaration and are only summarized here.[5]

Plaintiff and his counsel agreed to the terms of the Settlement because, in their view, the Settlement substantially achieves Plaintiff's objectives in the Action. Plaintiff's Counsel negotiated with Defendants with the objective of addressing Plaintiff's concerns, that a transaction be effected that did not exclude any and was fair to all of the Company's shareholders, including the holders of its ADSs. The Settlement addressed Plaintiff's concerns as SCOR agreed to increase its offer by 7.9%, or approximately $259.6 million. In addition, Converium's shareholders, including the holders of its ADSs, have or will receive the same amount of consideration for their respective interests in the Company, as SCOR completes its cash out of the Company's remaining stock. This was critical because, without this final element, Plaintiff would not have been in a position to recommend the Settlement to the Court.

---

[5] A full recitation of the facts can be found in the Attorney Declaration submitted herewith. The facts contained herein and in the Long Declaration are based upon Plaintiff's Counsel's investigation and interviews taken by Plaintiff's Counsel.

As described above and in the Attorney Declaration, Defendants have expressly acknowledged the substantial role Plaintiff had in causing material benefits to the Company's shareholders.

Plaintiff and his counsel have agreed to the Settlement based on their legal and business judgment that it is fair to both Converium's shareholders and the holders of its ADSs. It was only *after* Plaintiff and Defendants agreed to the substantive terms of the Settlement that counsel discussed compensation for Plaintiff's Counsel's. Atty. Decl. at ¶ 8. The negotiations were completely arm's-length, which is reflected in the fee and expense application now before the Court. *Id.* An award of Plaintiff Counsel's fee and expense request, to be paid by SCOR or its successor in interest, will not diminish any benefit already received by Class members to any extent. Indeed, those fees and expenses, as awarded by the Court, will be paid *over and above* the increased consideration in the Offer. Atty. Decl. at ¶¶ 49, 51.

## III.  ARGUMENT

### A.    The Proposed Settlement Is Fair, Reasonable And Adequate And Should Be Approved

#### 1.    Standards for Approval of a Class Action Settlement

As this Court well knows, "[a]s a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *In re Global Crossing Sec. & Erisa Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). "Settlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'" *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (citation omitted; *accord Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002); *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 423 (S.D.N.Y. 2001). In evaluating a proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate. *Maywalt v.*

*Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995); *see also In re WorldCom Sec. Litig.,* No. 02 Civ. 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004). As noted by courts generally, "[t]he arm's-length compromise of a disputed claim has long been favored by the courts." E.g., *Sumitomo,* 189 F.R.D. at 280 (and cases cited therein). This is particularly true of class actions. *Sumitomo,* 189 F.R.D. at 280; *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,* 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). As the court in *WorldCom* summarized:

> In brief, the district court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not the product of collusion. A district court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.

2004 WL 2591402 at *10 (quotations and citations omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (3d Cir.), *cert. denied sub nom, Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.,* 544 U.S. 1044 (2005).

A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws. *See, e.g., Sumitomo,* 189 F.R.D. at 280.

The standards governing approval of class action settlements are well-established in this Circuit. In *City of Detroit v. Grinnell Corp.,* the Court of Appeals held that the following were factors to be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). In applying these factors, a court neither substitutes its judgment for that of the parties who negotiated the settlement nor conducts a mini-trial of the merits of the action. *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 46, 53 (S.D.N.Y. 1993). As the Second Circuit stated in *Newman v. Stein:*

> [T]he role of a court in passing upon the propriety of the settlement of a . . . class action is a delicate one . . . . [W]e [recognize] that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal for the trial.'"

464 F.2d 689, 691-92 (2d Cir. 1972); *accord Maley,* 186 F. Supp. 2d at 360-61.

Plaintiff respectfully submits that the Settlement is eminently fair, reasonable and adequate when measured under the foregoing criteria, represents an excellent result for the Class, and should be approved by this Court.

### 2. Application of the *Grinnell* Factors Supports Approval of the Settlement

#### a. The Complexity, Expense and Likely Duration of the Litigation

The "complexity, expense and likely duration of the litigation" are factors that the Court should consider in evaluating a proposed settlement for approval. *Grinnell,* 495 F.2d at 463; *In re Drexel Burnham Lambert Group Inc.,* 130 B.R. 910, 927 (S.D.N.Y. 1991). "In evaluating the settlement of a **securities** class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *Sumitomo,* 189 F.R.D. at 281 (citations omitted; emphasis added). That statement is certainly true here.

As reflected in the Attorney Declaration, this prosecution involved complex legal and factual issues, and, but for the Settlement, would have involved substantial document discovery. Indeed, Plaintiff's Counsel had already undertaken a comprehensive investigation prior to

reaching agreement on the terms of the Settlement, and would have had tens of thousands of additional documents to review if no settlement had been reached. And notwithstanding Plaintiff's Counsel's investigation, continued prosecution and trial of this case would have required Counsel to take the depositions of numerous witnesses, the majority of which are located overseas. In addition, all parties would have relied on a number of experts to produce reports and testify on complex issues including regulatory and damages calculations; the successful prosecution of this Action would have depended upon extensive discovery of those experts.

The Action involved a cross-border European tender offer, the adequacy of that transaction, and the proposed treatment of American shareholders in relation thereto. The laws of numerous countries could have been implicated here, not only with respect to the merits of the Action, but also with regard to Plaintiff's attempts to complete discovery and proceed to trial. Difficult issues would have arisen regarding obtaining documents and seeking testimony, including the impact of the Hague Convention on international service. Moreover, Plaintiff would have been confronted with the fact that the SEC and the Swiss Takeover Board, after conducting investigations, permitted the transaction to go forward.

Absent the Settlement, there would have been significant additional resources and costs expended to prosecute the claims through trial and the inevitable appeals. *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"). Given the complex issues at the heart of Plaintiff's allegations, this was a challenging case to present to a jury. In contrast, the Settlement provides a definite and substantial recompense to the Class now, rather than await

the uncertain outcome prompted by the effort and time devoted to trial and likely appeals. As

the Court held in *Maley:*

> Settlement at this juncture results in a substantial and tangible present recovery,
> without the attendant risk and delay of trial. These factors weigh in favor of the
> proposed Settlement. As the court in *Slomovics v. All for a Dollar, Inc.,* 906 F.
> Supp. 146, 149 (E.D.N.Y. 1995), concluded: "The potential for this litigation to
> result in great expense and to continue for a long time suggest that settlement is in
> the best interests of the Class." *Id.* (citation omitted). The same reasoning applies
> here. Delay, not just at the trial stage but through post-trial motions and the
> appellate process, would cause Class Members to wait years for any recovery,
> further reducing its value.

186 F. Supp. 2d at 361-62 (citing, *inter alia, American Bank Note,* 127 F. Supp. 2d at 424-25).

### b.    The Response of the Class

As the cases report, a positive reaction of the Class to the proposed Settlement is a further

factor favoring its approval by the Court. *See Grinnell,* 495 F.2d at 462 (approving settlement

where only twenty objectors appeared from group of 14,156 claimants); *Maley,* 186 F. Supp. 2d

at 362-63 ("It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."). The fairness of the Settlement is

also supported by the fact that, since the announcement of the Settlement and mailing of nearly

25,000 Notices to the Class, not a single objection to the Settlement or Plaintiff's request for

attorneys' fees and expenses has been submitted to the Court. Atty. Decl. at ¶ 9. The Notice

informed Class members of, *inter alia*:

- The background and history of the Action and settlement negotiations;

- The nature of the claims asserted;

- The terms of the Settlement as consideration for the release of claims
  contemplated thereby and the amount of Plaintiff's Counsel's fee and expense
  request; and

- The time and place of the Settlement hearing and the procedures that Class
  members must follow if they wish to appear or object, or otherwise be heard at the
  hearing.

*Id.*; *see also,* Tr. Decl., Ex. 6. This lack of any objection – and resulting implicit support from the Class members – is deserving of substantial weight by the Court.

### c. The Stage of the Proceedings and Amount of Discovery Completed

"[T]he stage of the proceedings and the amount of discovery completed" are other *Grinnell* factors to be considered in determining the fairness, reasonableness and adequacy of a settlement. *Grinnell,* 495 F.2d at 463. These criteria are met here. While the Settlement was reached at a relatively early stage in this litigation, when formal discovery had not yet begun in earnest, courts recognize that "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *In re Global Crossing,* 225 F.R.D. at 458 (S.D.N.Y. 2004) ("Plaintiffs' counsel appear to have scrutinized the facts of the Actions from the earliest stages of the litigation and developed an informed basis from which to negotiate a reasonable compromise."); *Maley,* 186 F. Supp. 2d at 363-64 ("To approve a settlement, however, "the Court need not find that the parties have engaged in extensive discovery.") (citing, *inter alia, American Bank Note,* 127 F. Supp. 2d at 425-26). Well before the Settlement was reached here, Plaintiff's Counsel had extensively analyzed and investigated the events and transactions alleged in the Complaint, having reviewed and analyzed Defendants' public statements and regulatory filings, and reviewed thousands of pages of documents obtained from various sources. In short, Plaintiff's Counsel engaged in sufficient investigation and discussions about the merits of the Action to evaluate fully the merits of the claims and the obstacles to success. *See Maley,* 186 F. Supp. 2d at 364 (Even though discovery had not begun by the time settlement was reached, "Plaintiffs' Counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement."); *In re Medical X-Ray Film*

*Antitrust Litig.,* No. CV-93-5904, 1998 WL 661515, at *4 (E.D.N.Y. Aug. 7, 1998).

Nevertheless, Plaintiff's Counsel had conducted extensive discovery prior to seeking preliminary

approval by the Court and sending out Notice to the Class. Thus, in this case, it may be said that

the parties "have a clear view of the strengths and weaknesses of their cases." *In re Warner*

*Comm. Sec. Litig.,* 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986).

### d. Risks Involved in Establishing Liability and Damages, and in Maintaining the Class Action Through Trial

*Grinnell* holds that, in assessing the fairness, reasonableness and adequacy of a

settlement, courts should consider such factors as the "risks of establishing liability," "the risks

of establishing damages," and "the risks of maintaining the class action through the trial." 495

F.2d at 463 (citations omitted). These factors also support approval of the Settlement.

In addition, while Defendants have agreed to the certification of the Class for purposes of

the Settlement, there would have been no such agreement had Plaintiff prosecuted the Action to

trial. Defendants would have vigorously challenged Plaintiff's motion for class certification.

Any reduction in the size of the Class would have affected the claims and damages at issue in the

Action. The result of this fact-specific inquiry was anything but assured. *See, generally, e.g., In*

*re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,* No. MDL 1500, 02 Civ. 5575(SWK), 2006

WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (risk of succeeding in certifying class supported

approval of settlement); *In re Global Crossing,* 225 F.R.D. at 460 (same). According to the

Third Circuit:

> [N]ot only does the aggregation of the claims enlarge the value of the suit, but
> often the combination of the individual cases also pools litigation resources and
> may facilitate proof on the merits. Thus, the prospects for obtaining certification
> have a great impact on the range of recovery one can expect to reap from the
> action.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 817 (3d Cir. 1995).

While Plaintiff is convinced that his claims were meritorious when filed, through counsel's investigation, discovery (particularly document discovery and oral examination) and consultation with his financial advisor, Plaintiff and his counsel have concluded that the chances of success on the claims Plaintiff asserted were too slim to warrant further litigation.

Assuming that Plaintiff could overcome a motion to dismiss, there remained substantial risk in establishing liability. Atty. Decl. at ¶ 43. The Complaint alleged that (i) the Offer had triggered the application of the provisions of the Securities and Exchange Act of 1934 (the "Exchange Act") governing tender offers, and that SCOR has violated section 14(d) of the Exchange Act, which requires certain disclosures in connection with tender offers, and section 14(e) of the Exchange Act, which prohibits fraudulent, deceptive, or manipulative acts in connection with tender offers; and (ii) SCOR and Patinex violated Section 13(d) of the Exchange Act, by failing to disclose that SCOR and Patinex "acted as a group" in connection with the Offer. Atty. Decl. at ¶ 5.

The risks faced by Plaintiff in establishing liability, and the time and expense that would be required to conclude the litigation, also demonstrate that the Settlement provided the Class with a significant benefit that was not only fair, reasonable and adequate, but achieved a favorable result. In addressing the fairness, reasonableness and adequacy of the Settlement, this Court must balance the benefits afforded by the Settlement, and the immediacy and certainty of a benefit for the members of the Class, against the continued risks of litigation. While Plaintiff's Counsel believe that the claims asserted by Plaintiff have substantial merit, the complexities and uncertainties of this litigation clearly warrant approval of the Settlement. In addition, while Plaintiff believed that his claims were and are meritorious, he also recognized that he would have

to overcome significant obstacles to achieve a recovery for the Class if the case were tried, with the distinct possibility that any injunctive relief and a judgment, even if Plaintiff prevailed, might well have provided Class members with less value than they have received as a result of the Settlement.  Atty. Decl. at ¶ 43.

Even if Plaintiff could overcome Defendants' motion to dismiss and fought through the difficulty of additional motions, discovery, trial and the inevitable battle of experts, and appeal, ultimately it was at best debatable whether a successful result could be obtained, or at the very least that a judgment could have been attained which would equal the negotiated benefits obtained by Plaintiff through the Settlement process.  *Id.*  The Settlement obviates the need to litigate these and other complex issues to trial, with the likelihood of an appeal to follow, and placed a substantial benefit in the hands of shareholders without significant delay.  *Id.*

Specifically, Plaintiff's Counsel were a factor in securing SCOR's agreement to increase its offer by 7.9%, or approximately $259.6 million.  Plaintiff's Counsel also succeeded in obtaining a commitment that all of Converium's shareholders, including the American owners of ADSs, would receive the same consideration for their shares.  Plaintiff's Counsel were ultimately satisfied that the terms of the Settlement were in the best interests of the Class and that the terms of the Settlement allowed shareholders to determine for themselves whether or not the Offer was in their best interests.  In addition, Plaintiff's Counsel actively monitored the situation to ensure that, all of Converium ADS holders were treated the same and received the same value for their shares.  As set forth in the Attorney Declaration, this is actually the case.  Accordingly, based on their investigation, discovery efforts, their analysis of the applicable legal principles, and their consultations with their financial expert, Plaintiff's Counsel concluded that the negotiated benefits of the Settlement provide more than ample consideration for the parties to settle and

release the claims in this Action, given the substantial risks, costs, and uncertainties of continued litigation. Atty. Decl. at ¶ 44.

Both Plaintiff's Counsel and counsel for Defendants respectfully urge approval of this Settlement that they believe is fair and reasonable, properly balancing the risks of continued litigation against the benefits provided and representing the best overall resolution for the members of the Class. Accordingly, because the Settlement is demonstrably fair, reasonable and adequate in light of the factors discussed above, this Court should not hesitate to grant full approval of the Settlement.

3.    **The Proposed Settlement is the Product of Informed Arm's-Length Negotiations and is Presumptively Fair**

"In appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is 'entitled to great weight'. There is thus a strong initial presumption that the compromise as negotiated herein under the [c]ourt's supervision is fair and reasonable." *In re Michael Milken,* 150 F.R.D. at 54. As the court noted in approving the settlement in *In re Sumitomo Copper Litig.:*

> So long as the integrity of the arm's-length negotiation process is preserved . . . *a strong initial presumption of fairness attaches to the proposed settlement.'* In re Paine Webber, 171 F.R.D. at 125. As likewise stated by the *Manual for Complex Litigation,* a *'presumption of fairness, adequacy and reasonableness* may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.' *Manual for Complex Litigation,* Third ¶ 30.42 (1995).189 F.R.D. at 280-81 (emphasis in original).

As in *Sumitomo,* the parties to the Settlement negotiated it at arm's-length. Thus, the presumption of fairness "clearly attaches here." As discussed above and as set forth in the Attorney Declaration, the Settlement was negotiated at arm's-length over several weeks among Plaintiff's counsel and counsel for Defendants. Accordingly, Plaintiff and his Counsel recommend that the Court approve the Settlement.

For the foregoing reasons, Plaintiff respectfully submits that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class and fully merits the Court's approval.

**B.    The Court Should Certify The Class For Purposes Of The Settlement**

**1.    Standards for Class Certification**

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. A party seeking class certification must first show that the class action satisfies the following four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking class certification must also satisfy one of the categories set forth in Rule 23(b). Here, certification is sought pursuant to Rule 23(b)(3), requiring that:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). This rule states that the matters pertinent to these determinations include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Id.*

"The Second Circuit has acknowledged the propriety of certifying class solely for settlement purposes . . . and the Supreme Court has confirmed the viability of such

certifications." *In re Global Crossing*, 225 F.R.D. at 451. The Second Circuit "has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002); *see In re NTL Sec. Litig.*, No. 02 Civ. 3013 (LAK), 2006 WL 330113, at *4 (S.D.N.Y. Feb. 14, 2006) (liberal interpretation of Rule 23 in securities fraud cases). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Independent Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). Here, there is no dispute that this action meets all of the Rule 23(a) and (b)(3) requirements for purposes of the proposed Settlement.

### 2. Rule 23(a)(1): The Class is Numerous

Rule 23(a)(1) requires that the Class be so numerous that joinder of all members is impracticable. "This rule does not require that joinder of all parties is impossible, only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000). In this Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Precise quantification of class members is not required, and the Court may make common sense assumptions to support a finding of numerosity. *See Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000). As of June 30, 2007, more than 146.6 million shares of Converium common stock were outstanding and actively trading. The Class consists of thousands of investors. Thus, the numerosity requirement is met.

### 3. Rule 23(a)(2): Questions of Law or Fact are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mean that all class members must make identical claims and arguments, but only that "common issues of fact or law affect all class

members." *In re Indep. Energy Holdings*, 210 F.R.D. at 479. And "[w]here, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail." *Oxford*, 191 F.R.D. at 374.

Here, Plaintiff alleged common injuries to all shareholders arising from a common course of misconduct by Defendants. The primary issue in the Action is whether the Defendants violated federal securities laws in connection with the Offer. Accordingly, the commonality requirement is satisfied. Plainly, the claims of all Class members arise from a single alleged course of conduct and are all based on the same legal theories. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (commonality satisfied where plaintiffs alleged same common questions of fact or law and was undisputed by defendants). The commonality requirement is met.

### 4.    Rule 23(a)(3): Plaintiff's Claims are Typical of the Claims of other Class Members

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). "While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." *Vivendi*, 242 F.R.D. at 84-85 (quoting *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997)). Typicality does not require that the situations of the named representative and the class members be identical; "minor variations in the fact patterns of underlying individual claims" will not defeat typicality. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Moreover, the typicality and

16

commonality requirements "tend to merge." *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 356 (S.D.N.Y. 2002). This suggests that typicality generally will be met if the commonality requirement is met. Here, the claims of each Class member arise from the same alleged uniform course of conduct, namely, the conduct of Defendants in connection with the Offer. Like all Class members, Plaintiff alleges that he held ADSs of Converium during the period in issue. The typicality requirement thus is met.

### 5.    Rule 23(a)(4): The Proposed Class Representative will Adequately Protect the Interests of the Class

Rule 23(a)(4), the adequacy of representation requirement, entails two showings: (i) class counsel must be qualified, experienced and generally able to conduct the litigation; and (ii) the representative plaintiff's interests must not be antagonistic to those of the remainder of the class. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

*First,* it is submitted that Weiss & Lurie and Rigrodsky & Long, P.A., counsel for Plaintiff, are preeminent law firms representing plaintiffs in securities and other shareholder class actions in courts throughout the nation. Both firms have extensive experience in successfully prosecuting such actions and have achieved significant results for their clients and for certified investor classes. This is shown by each firm's resume, filed contemporaneously herewith.

*Second,* with respect to potential intra-class conflicts, "the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *Vivendi*, 242 F.R.D. at 85 (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.3 (1982)). As discussed above, Plaintiff's claims are typical because the allegedly unlawful course of conduct by

Defendants is common to all of the Class members. Questions of fact arising from these alleged activities are common to each Class member, as are questions of law regarding whether Defendants' conduct violated the federal securities laws. There are no conflicts or antagonisms between the claims of Plaintiff and those of the members of the Class. The adequacy of representation requirement is met.

### 6. Certification under F.R.C.P. 23(b)(1) and (b)(2) is Proper

Courts sitting in New York have repeatedly certified actions for class treatment involving corporate transactions, like the claims asserted by Plaintiff here. *See, e.g., In re Citigroup Pension Plan ERISA Litig,* 241 F.R.D. 172 (S.D.N.Y. 2006). Courts in other states have likewise held that actions challenging corporate transactions, like the transaction at issue in this case, are properly certifiable under rules of civil procedure similar to Fed. R. Civ. P. 23. *See, e.g., Turner v. Bernstein,* 768 A.2d 24 (Del. Ch. 2000); *Nottingham Partners v. Dana,* 564 A.2d 1089, 1094-96 (Del. 1989); *Hynson v. Drummond Coal. Co., Inc.,* 601 A.2d 570, 578-79 (Del. Ch. 1991). The Action, therefore, qualifies as a class action under Rules 23(b)(1) and (b)(2).

### 7. Counsel for Plaintiff should be Appointed Class Counsel under Rule 23(g)

Rule 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). Plaintiff's Counsel satisfy the requirements of Rule 23(g) and should be appointed as Class Counsel. As discussed above, these firms have fairly and adequately represented the Class. Proposed Class Counsel are knowledgeable about the applicable law and experienced in handling class actions, have performed substantial work in pursuing the Class's claims here, and have committed substantial resources to representing the Class. *See* Fed. R. Civ. P. 23(g)(1)(B).

## IV.    CONCLUSION

Accordingly, for the reasons and upon the authorities set forth above, Plaintiff respectfully requests that the Court (1) approve the Settlement as fair, reasonable and adequate and (2) approve certification of the Class for settlement purposes.

Dated: February 4, 2008                     Respectfully submitted,

**WEISS & LURIE**

By:    s/Joseph H. Weiss
      Joseph H. Weiss (JW-4534)
      James E. Tullman (JT-9597)
      David C. Katz (DK-6235)
      551 Fifth Avenue
      New York, NY  10176
      Telephone:  (212) 682-3025
      Facsimile:  (212) 682-3010

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky (SR-9430)
Brian D. Long
919 N. Market Street, Suite 980
Wilmington, DE 19803
Telephone:  (302) 295-5310
Facsimile:  (302) 654-7530

***Counsel for Plaintiff and the Class***