**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEIL L. SCLATER-BOOTH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SCOR, S.A., and PATINEX AG,<br><br>Defendants. | Civil Action No. 07-CV-3476 (GEL) |

**DECLARATION OF SETH D. RIGRODSKY AND JOSEPH H. WEISS IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

SETH D. RIGRODSKY AND JOSEPH H. WEISS hereby declare:

1. I, Seth D. Rigrodsky, am a shareholder in the law firm of Rigrodsky & Long, P.A. ("Rigrodsky & Long"). I, Joseph H. Weiss, am the senior partner of the law firm Weiss & Lurie. Rigrodsky & Long and Weiss & Lurie are Plaintiff's Counsel in the above-captioned action (the "Action").

2. We respectfully submit this declaration in support of (a) the proposed settlement of the Action (the "Settlement"), and (b) Plaintiff's application for an award of attorneys' fees and reimbursement of expenses. We make this declaration based upon our personal knowledge.

3. The purpose of this declaration is to present to the Court a detailed factual background of the various events and efforts of Plaintiff's Counsel surrounding this litigation to assist the Court in evaluating the fairness of the proposed settlement, the

quality of the legal services rendered by Plaintiff's Counsel, and the reasonableness of Plaintiff's Counsel's application for attorneys' fees and reimbursement of expenses. The facts set forth in this declaration are principally derived from the pleadings and proceedings in this Action; Plaintiff's Counsel's review of relevant documents filed and produced in this litigation; and the interviews of SCOR executives (1) François de Varenne, Group Chief Operating Officer, and (2) James Root, former Head of Investor Relations.

## INTRODUCTION

4.     Plaintiff commenced this Action on behalf of holders of the registered shares of Converium Holdings AG ("Converium" or the "Company") residing in the United States and holders of the Company's American Depository Shares ("ADS"), against SCOR, S.A. ("SCOR") and Patinex AG ("Patinex") (collectively, the "Defendants"), the entities acquiring Converium. Long Aff., Ex. 1.[1]

5.     Plaintiff brought this Action in response to SCOR's April 5, 2007 announcement that it had made a public tender offer in Switzerland for all publicly held registered shares of Converium.[2] Long Aff., Ex. 1 at ¶ 2. The complaint sought injunctive and other appropriate relief on the grounds, *inter alia*, that the Offer was inadequate and unfair in that, in order to avoid U.S. disclosure requirements, it expressly excluded holders of American Depository Shares and certain other shareholders (the

---

[1] "Long Aff." refers to the Transmittal Affidavit of Brian D. Long in Support of Proposed Settlement and Application for Attorneys' Fees and Reimbursement of Expenses filed concomitantly herewith, and will be cited as such herein.

[2] SCOR's tender offer for Converium's publicly held registered shares is referred to herein as the "Offer."

"Class"). *Id.* at ¶ 1. More specifically, the Complaint alleges that (i) the Offer had triggered the application of the provisions of the Securities and Exchange Act of 1934 (the "Exchange Act") governing tender offers, and that SCOR had violated section 14(d) of the Exchange Act, which requires certain disclosures in connection with tender offers, and section 14(e) of the Exchange Act, which prohibits fraudulent, deceptive, or manipulative acts in connection with tender offers; and (ii) SCOR and Patinex violated Section 13(d) of the Exchange Act, by failing to disclose that SCOR and Patinex "acted as a group" in connection with the Offer. Long Aff., Ex. 2 at ¶ A. Indeed the proposed transaction was the subject of an investigation by the U.S. Securities and Exchange Commission and the Swiss Takeover Board, both of which permitted it to go forward.

6. The Complaint sought, among other things, an order enjoining Defendants and their agents and employees, preliminarily and permanently, from further violating the Exchange Act and requiring that the Offer be made available to all shareholders, including Americans. Long Aff., Ex. 1 at ¶ 1 and at p. 20.

7. Plaintiff's Counsel eventually undertook negotiations with representatives of Defendants and their advisors. As a result of these negotiations and other factors, ,SCOR increased its offer by 7.9% or $259.6 million. Furthermore, SCOR acknowledged that the pendency of the Action was a substantial causative factor in its May 10, 2007 decision to increase its offer by 7.9% or approximately $259.6 million. Long Aff., Ex. 2 at ¶ F; Long Aff., Ex. 3. Thereafter, the parties signed the Stipulation and Agreement of Settlement (the "Stipulation") providing for the settlement of the Action and other customary terms. Long Aff., Ex. 2.

8. Following negotiation of the material terms of the Settlement, Plaintiff's Counsel negotiated at arm's-length with counsel for Defendants the amount of attorneys' fees and expenses which counsel would ask the Court to award. Defendants agreed not to object to an award of up to $500,000 in fees and $50,000 for reimbursement of expenses incurred. The fees and expenses are over and above the consideration paid to the Class and will not impact the amount of that consideration in any way. Long Aff., Ex. 2 at ¶ 7. Plaintiff's Counsel also continued to monitor the situation to ensure that American shareholders and holders of ADSs were not treated disparately from other owners of Converium stock.

9. On November 13, 2007, this Court entered its Scheduling Order Concerning Notice and Hearing on Settlement (the "Scheduling Order") directing dissemination of the proposed notice (the "Notice") to class members to advise them of the Settlement and fee application of Plaintiff's Counsel and scheduling the Settlement Hearing for February 8, 2008. Long Aff., Ex. 4 at ¶ 5. Since December 5, 2007, SCOR has disseminated approximately 25,000 Notices in accordance with the Scheduling Order. Long Aff., Ex. 6 at ¶ 3. As of the time of this declaration, we are not aware of any objections to the Settlement or to Plaintiff's Counsel's fee and expense request. The deadline for filing any objection to the Settlement was January 29, 2008. Long Aff., Ex. 4 at ¶ 11.

10. Plaintiff respectfully submits that the Settlement constitutes a fair and reasonable resolution of the claims asserted on behalf of Plaintiff and the Class and jointly requests with Defendants that the Court approve the Settlement. Likewise, we

respectfully submit that the Settlement is fair and reasonable and that the application for an award of attorneys' fees and reimbursement of expenses is equally fair and reasonable in light of, among other things, the substantial benefits achieved for the Class through the litigation efforts of Plaintiff's Counsel on a fully contingent basis.

## BACKGROUND AND HISTORY OF THE LITIGATION

**A.      Parties**

11.     The representative Plaintiff was a Converium shareholder prior to and at the time of the announcement of the Merger.  Plaintiff continued to hold his stock throughout the course of the litigation. Long Aff., Ex. 1 at ¶ 18.

12.     Converium is a Swiss corporation with its principal offices located in Zug, Switzerland.  Converium is an independent international multi-line reinsurer.  At all relevant times, the Company's American Depository Shares traded on the New York Stock Exchange under the ticker symbol "CHR" and its stock traded on the SWX Swiss Exchange.  *Id.* at ¶ 19.

13.     SCOR is a corporation organized and existing under the laws of France. SCOR's principal business is to provide (directly or through its consolidated subsidiaries) Life and Non-Life reinsurance services, as well as direct insurance services.  SCOR is a global reinsurance business that in 2006 generated approximately 25% of its gross premiums in North America through its 100% owned United States subsidiaries, including SCOR Reinsurance Company, which is located in this District. *Id.* at ¶ 20.  Its ADSs are traded on the New York Stock Exchange under the ticker symbol "SCO."

14.     Patinex is a corporation organized and existing under the laws of Switzerland. *Id.* at ¶ 21.

B.    **The Challenged Transaction**

15.     In December 2005, Patinex notified Converium in a Swiss filing that it had acquired 12.49% of the voting rights in the Company.  5.06% of the voting rights were in the form of 7,425,000 registered shares, and 7.43% were in the form of purchase rights with an entitlement to purchase 10,900,000 registered shares. *Id.* at ¶ 28.

16.     In connection with the acquisition, Patinex sought an exemption from various state insurance departments (New Jersey, Connecticut and California), whose approval is ordinarily required when there are changes in the ownership structure of an insurance company.  To obtain a state insurance regulatory exemption from such an approval, Patinex represented that its investment was not being made for the purpose of changing or influencing the ultimate control of Converium.  In granting the requested approval, at least one state insurance department required Patinex to file *another* exemption request should its ownership position exceed 15%.  Prior to February 2007, Patinex's ownership position actually exceeded 15%.  *Id.* at ¶ 29.

17.     Between December 2005 and May 1, 2007, Patinex increased its holdings from 12.49% to 19.8% of the outstanding shares of Converium.  Between November 2006 and February 16, 2007, SCOR purchased 8.3% of Converium's registered shares through open market purchases.  On January 24, 2007, SCOR and Patinex entered into a confidentiality agreement to discuss a possible transaction involving Converium. *Id.* at ¶ 30.

18. On February 17 and 18, 2007, SCOR presented a proposal to acquire all of the Company's publicly held common stock for .5 SCOR shares and CHF 4 per share of Converium.

19. On February 17, 2007, SCOR proposed an offer for the acquisition of the Company to the Converium Board of Directors. *Id.* at ¶ 35.

20. On February 18, 2007, the Converium Board unanimously rejected the offer. *Id.* at ¶ 36.

21. On February 21, 2007, SCOR filed a Schedule 13D. That filing revealed that on February 16, 2007, Patinex and SCOR had entered into an agreement referred to herein as the "Patinex SPA." The Patinex SPA provided that Patinex would sell its Converium shares and warrants to SCOR for CHF 121,885,470, plus 14,331,037 newly issued SCOR shares. *Id.* at ¶ 31.

22. On February 26, 2007, SCOR issued a formal pre-announcement of the Offer, indicating that it intended to launch a public tender offer on or about April 2, 2007, for all of Converium's shares. On April 5, 2007, SCOR issued a Swiss offer prospectus announcing the Offer (the "Offer Prospectus"). The Offer Prospectus states in relevant part that:

- SCOR held 12,200,000 Converium shares and has entered into share purchase agreements with two of Converium's largest shareholders, Patinex and Alecta, to purchase an aggregate of 36,120,350 additional shares.

- SCOR intended to offer for each Converium share 0.5 SCOR shares with a nominal value of EUR 7.8769723 per share, as well as CHF 4 in cash.

- The Offer would not apply to the Company's ADSs.

- SCOR's Offer would be subject to a number of conditions, including valid

      acceptances for shares representing at least 50.01% of the Company's share capital.

- The Offer would not be made in or into the United States and would only be accepted outside of the United States. *Id.* at ¶ 37.

23.    The Offer was subject to approval by the Swiss Takeover Board. In seeking that approval, in a memorandum dated March 9, 2007, SCOR asserted, "[i]f the Offer is not extended into the US, Converium shareholders may nonetheless find ways to participate in the Offer" and pointed to the "widely-known practice of sophisticated US investors finding ways to participate in foreign tender offers through foreign intermediaries." *Id.* at ¶ 42. In essence, SCOR was asserting that, although the Offer would not be available to holders inside the United States (including holders of ADSs), sophisticated stockholders could (and likely would) find a way to participate in the Offer were they so motivated. This was based, at least in part, on the fact that many of these holders were institutional in nature and had European and other offices.

24.    On April 20, 2007, the Swiss Takeover Board ruled that under Swiss law, SCOR must treat all Converium shareholders equally. *Id.* at ¶ 41.

25.    On May 1, 2007, Plaintiff filed his Class Action Complaint. Long Aff., Ex. 1.

26.    On May 2, 2007, Patinex filed a Schedule 13D with the United States Securities and Exchange Commission ("SEC") disclosing that: (i) on February 16, 2007, it and SCOR entered into a share purchase agreement whereby SCOR agreed to acquire from Patinex, and Patinex agreed to sell to SCOR 29,020,350 registered shares of Converium at a closing that occurred on April 26, 2007 (the "Closing"); (ii) immediately

8

after the Closing, Patinex sold 1,388,017 shares of SCOR in a privately negotiated transaction; and (iii) following the consummation of the aforementioned transactions, Patinex is the beneficial owner of 9.5% of the share capital of SCOR. Long Aff., Ex. 6 at 4-5.

27.     On May 3, 2007, SCOR accepted service of the Complaint and Plaintiff's Counsel agreed to adhere to the schedule established in the Converium Action (as hereinafter defined). Pursuant to that agreement, SCOR provided to Plaintiff's Counsel for the Class the approximately 30,000 pages of documents it had produced in discovery in the Converium Action. *Id.* at 4.

28.     The allegations made in the Complaint concern the same issues as those contained in a complaint filed by Converium on April 16, 2007, against SCOR and Patinex in an action captioned *Converium Holding AG v. SCOR S.A. and Patinex AG*, Civil Action No. 07 CV 3042 (GEL) (S.D.N.Y.) (the "Converium Action"). *Id.*

29.     On May 10, 2007, SCOR and Converium announced that they had reached an agreement on the terms and conditions of a friendly transaction in connection with the Offer. As part of that agreement, SCOR agreed (i) to increase the cash portion of the Offer Price from CHF 4 to CHF 5.50, and (ii) not to reduce the offer price by the amount of the dividend of CHF 0.20 per Converium Share adopted by the shareholders' meeting of Converium on May 10, 2007, which represents an aggregate price increase of 7.9%. *Id.* at 5.

30.     On May 10, 2007, Converium voluntarily dismissed with prejudice the Converium Action. *Id.*

31.     On May 10, 2007, SCOR announced that it had agreed to increase the Offer Price by 7.9% or a total value of approximately $259.6 million.

32.     SCOR has acknowledged that the pendency of this Action and the Converium Action were factors it considered in making its decision to increase the Offer Price. *Id.*

C.     **The Parties Negotiate the Settlement**

33.     Through the process of intense negotiations, Plaintiff and Defendants reached an agreement to resolve the Action on the terms and conditions set forth below, subject to Court approval.

34.     In connection with those negotiations, SCOR acknowledged that it agreed to increase its Offer Price by 7.9% per share, or approximately $259.60 million in aggregate, as a result of, among other things, the pendency of the Action and the efforts of Plaintiff's Counsel. Long Aff., Ex. 3 and Ex. 6 at 5. The proposed settlement also included the representation, since fulfilled, to acquire the Converium securities owned by Americans at the same price paid to shareholders outside the United States. Defendants also agreed to allow Plaintiff to take certain discovery to confirm the fairness of the Settlement, including SCOR's treatment of the members of the Class, as well as other Converium shareholders in connection with the Offer and related transactions.

35.     On June 9, 2007, the Swiss Takeover Board approved the Offer, which commenced on June 12, 2007 with the initial offer period ending July 9, 2007. An additional acceptance period commenced on July 13, 2007 and ended July 26, 2007.

10

36. The Offer was settled on August 8, 2007. Long Aff., Ex. 4. According to SCOR's filings with the SEC, the Offer was neither an offer to sell nor a solicitation of an offer to buy securities in the United States or to or from U.S. persons. The Offer was not made in or into the United States and was not capable of being accepted by U.S. persons or persons in the United States.

37. Upon settlement of the Offer, SCOR owned 96.32% of the issued and outstanding Registered Shares. At Converium's Extraordinary Meeting of shareholders held on August 30, 2007, the shareholders approved a resolution to change its name from Converium Holding Ltd. to SCOR Holding (Switzerland) Ltd. In addition, the shareholders of Converium approved the election of a new Board of Directors, comprising Denis Kessler, Georges Chodron de Courcel, Jürg Marty, Dr. J. Friedrich Sauerländer, Jean-Luc Besson, Gilles Meyer and Victor Peignet.

38. Following the settlement of the Offer, SCOR continued to make purchases of Converium stock. As a result, SCOR holds in excess of 98% of Converium's voting rights and outstanding Shares. According to SCOR in its filings with the SEC, pursuant to Article 33 of the Swiss Federal Act on Stock Exchanges and Securities Trading ("Article 33"),[3] SCOR may file (and has filed) a cancellation action with the Commercial

---

[3] Pursuant to Article 33, a cancellation proceeding is only available if it is filed three months following the expiration of the additional acceptance period of a Swiss public tender offer for the shares of a Swiss listed company and if the applicant directly or indirectly owns more than 98% of the voting rights in such company. The price to be paid to shareholders whose shares are cancelled in the cancellation proceeding must be identical to the offer price that was paid to shareholders in the Swiss public tender offer. Here, SCOR has complied with that requirement with respect to both owners of Converium stock, and the ADSs.

Court of the Canton of Zurich on October 25, 2007, seeking a court-ordered cancellation of the remaining shares of Converium stock not owned by SCOR (the "Cancellation").

39.     Upon the declaration of effectiveness of the Cancellation by the court in Zurich, Switzerland, at the earliest three months from November 22, 2007 (the date of publication of the notification by the court in Zurich, Switzerland of the Cancellation action), all shares of Converium not owned by SCOR will be cancelled. Following such cancellation, under Swiss law, Converium will reissue the cancelled shares to SCOR and SCOR will be required to pay former shareholders of Converium the Swiss Offer consideration consisting of (i) one-half of a SCOR share, nominal value EUR 7.8769723 (a "SCOR Share"), (ii) CHF 5.50 in cash, and (iii) EUR 0.40 in cash (collectively, the "Cancellation Consideration"), which is the same combination of cash and shares as was offered in the Offer (the "Offer Price").

40.     According to SCOR's filings with the SEC, holders of ADSs (as evidenced by American Depositary receipts, each representing one-half of one share of Converium stock) will be entitled to the US dollar equivalent of half the Cancellation Consideration, less any fees as described below. ADS holders will receive their consideration through The Bank of New York, the depositary for Converium's American Depositary Receipt Program. In that regards, holders of ADS will receive approximately the same amount of consideration as the other holders of Converium stock. All other holders of stock will receive the same consideration as in the Offer.

41.     Plaintiff respectfully submits that the Settlement constitutes a fair and reasonable resolution of the claims asserted on behalf of Plaintiff and the Class, and

jointly requests with Defendants that the Court approve the Settlement. Likewise, we respectfully submit that the Settlement is fair and reasonable and that the application for award of attorneys' fees and reimbursement of expenses is equally fair and reasonable in light of, among other things, the substantial benefits achieved for the Class through the litigation efforts of Plaintiff's Counsel on a fully contingent basis.

**D.     Plaintiff Completes Discovery**

42.     Following the execution of the Stipulation, Plaintiff's Counsel were provided with thousands of additional pages of documents from Defendants regarding the transaction. Plaintiff reviewed the documents produced by Defendants. In addition, Plaintiff's Counsel traveled to Paris, France, to review thousands of pages of additional documents provided by SCOR's attorneys, and to conduct interviews of certain SCOR executives with substantial knowledge regarding the Offer and, specifically, the conduct challenged in the Offer. Specifically, Plaintiff's Counsel conducted thorough interviews of SCOR's Group Chief Operating Officer, François de Varenne, and its former Head of Investor Relations, James Root. The interviews covered a variety of topics designed to confirm the fairness of the Proposed Settlement, and included, among others: (1) SCOR's treatment of ADS holders in the United States in connection with the Offer; (2) the underlying transactions that led to the Offer, including SCOR's purchase of Converium shares from Patinex and its discussions with that entity; (3) SCOR's interaction with, and conduct before, the Swiss Takeover Board in connection with the Offer; (4) the negotiations leading to, and circumstances underlying, the Offer; (5) the consideration offered to Converium stockholders in connection with the Offer; (6) the litigation filed

against SCOR by Converium in connection with the Offer; and (7) the fact that the Action was a substantial causal factor in SCOR's decision to raise the Offer price.

43.     Following the completion of additional document and oral discovery, Plaintiff's Counsel concluded that there is more than substantial evidence that the Settlement results in a transaction that is fair to and in the best interests of Plaintiff and other public shareholders of Converium, taking into account all factors potentially affecting the value and business prospects of Converium, and available strategic alternatives. As a result, Plaintiff and his counsel are satisfied that the increased Offer and the payment of the same consideration to American shareholders provide more than ample consideration for the proposed Settlement. Long Aff., Ex. 2 at ¶ J and Ex. 6 at 6.

44.     While Plaintiff believed that his claims were and are meritorious, he recognized that he would have to overcome significant obstacles to achieve recovery for the Class if the case were tried, with the distinct possibility that any injunctive relief and judgment, even if Plaintiff prevailed, might well have provided class members with less value than they have received as a result of the Settlement. Long Aff., Ex. 6 at 9.

45.     Defendants would have strongly argued that SCOR paid a fair price and that no shareholder was damaged by Defendants' conduct. They would have also argued that they had fully complied with all applicable laws and had, eventually, received the approval of the Swiss Takeover Board, and that the SEC terminated its investigation. Plaintiff also would have faced the process of lengthy and difficult international discovery spanning multiple continents, along with all of the attendant difficulties in navigating the laws of several different countries.

46. Under these circumstances, even if Plaintiff overcame Defendants' motion to dismiss and fought through the difficulty of additional motions, discovery, the inevitable battle of experts, trial, and inevitable appeals to follow, ultimately it was at best debatable whether a more successful result could be obtained, or, at the very least, that a judgment could have been attained which would equal the negotiated benefits obtained by Plaintiff for the Class through the settlement process.

47. In sum, based on their investigation, extensive discovery efforts and their analysis of applicable legal principles, Plaintiff and his counsel concluded that the negotiated benefits of the Settlement provide more than ample consideration for the parties to settle and release the claims in this lawsuit, given the substantial risks, costs, and uncertainties of continued litigation.

## THE STIPULATION OF SETTLEMENT

48. The Stipulation and Agreement of Settlement was executed by the parties on May 24, 2007. Long Aff., Ex. 2.

49. The Stipulation stated that:

> On May 10, 2007, SCOR and Converium announced that they had reached an agreement on the terms and conditions of a friendly transaction in connection with the Offer. As part of that agreement, SCOR agreed (i) to increase the cash portion of the Offer Price from CHF 4 to CHF 5.50 and (ii) not to reduce the offer price by the amount of the dividend of CHF 0.20 per Converium Share adopted by the shareholders' meeting of Converium on May 10, 2007, which represents an aggregate price increase of 7.9%.

Long Aff., Ex. 2 ¶ F.

50. The Stipulation also provides that, contingent upon Court approval of the proposed Settlement, Plaintiff's Counsel will apply at the Settlement hearing for an award of attorneys' fees not to exceed $500,000 and reimbursement of expenses incurred in connection with the litigation not to exceed $50,000. Defendants will not oppose any such application. Any such amounts awarded by the Court shall be paid by Defendants or their successors-in-interest. Long Aff., Ex. 2 at ¶ 7.

51. Plaintiff's Counsel engaged in discovery that included the review of thousands of pages of documents regarding SCOR, Patinex, and Converium, as well as the Offer. In addition, Plaintiff's Counsel traveled to Paris, France, to review additional documents provided by SCOR's attorneys, and to conduct the interviews of certain SCOR executives with substantial knowledge regarding the Offer and, specifically, the conduct challenged in the Offer. Specifically, Plaintiff's Counsel conducted thorough interviews of SCOR's Group Chief Operating Officer and its Director of Investment Relations. After discovery was completed, and Plaintiff's Counsel assured themselves that the terms of the proposed Settlement were fair and reasonable, the parties sought leave from the Court to present the Settlement. Long Aff., Ex. 6.

52. On November 13, 2007, the Court entered the Scheduling Order, and directed that the Notice be given to all United States persons or entities who held shares of Converium or American Depository Shares (other than Defendants), either of record or beneficially, including any and all of their legal representatives, heirs, successors-in-interest, transferees or assigns of all such holders, immediate or remote, in each case solely in their capacities as public shareholders of Converium American Depository

Shares (defined in the Scheduling Order as the "Class"). Long Aff, Ex. 4. Pursuant to the Scheduling Order and in accordance with Federal Rule of Civil Procedure 23, approximately 25,000 copies of the Notice were mailed to the members of the Class on December 5, 2007. Long Aff., Ex. 6. Affidavit of Paul Mulholland concerning mailing notices filed with the Court on January 25, 2008.

53. Notice disseminated on December 5, 2007 advised Class members of the background and terms of the proposed Settlement. The Notice informs Class members of, *inter alia*:

- The background and history of the litigation and settlement negotiations;

- The nature of the claims asserted;

- The terms of the Offer as consideration for the release of claims contemplated thereby and the amount of Plaintiff's Counsel's fee and expense request; and

- The time and place of the Settlement hearing and the procedures that Class members must follow if they wish to appear or object, or otherwise be heard at the hearing.

Long Aff., Ex. 6.

### PLAINTIFF'S COUNSEL'S FEE AND EXPENSE APPLICATION

54. Contingent upon Court approval of the Settlement, Plaintiff's Counsel seek an award of attorneys' fees totaling $500,000 and reimbursement of $47,473.13 in expenses incurred in connection with the litigation. Long Aff., Ex. 2 at ¶ 7. Defendant SCOR has agreed to pay such fees and expenses awarded by the Court. *Id.* Plaintiff's Counsel believe that their request is fair and reasonable under the standards applicable in this Court and the relevant facts of this case. Perhaps most important, there have been no

17

objections to Plaintiff's Counsel's application for an award of attorneys' fees and reimbursement of expenses. The parties negotiated the fee requested at arm's length, and the fee award will in no way diminish the consideration already provided the Class. That is, SCOR will pay fees and expenses as awarded by the Court separate and above the consideration provided to Converium's shareholders. The Settlement will not diminish the consideration provided to these individuals and entities.

55.     The record shows that Plaintiff and his counsel were casual factors in producing significant benefits for members of the Class, in the form of approximately $259.6 million in additional consideration for *all* Converium's shareholders, including the members of the Class, who were treated the same as all other holders of Converium stock. Long Aff., Ex. 6 at 5. In addition, both SCOR representatives confirmed this fact.

56.     Plaintiff's Counsel's services to obtain the benefits achieved through the Settlement required a high level of experience and expertise in shareholder litigation. Plaintiff's Counsel have expended significant time, effort and resources in the diligent and successful prosecution of the Action and settlement negotiations as described herein. In connection with this litigation, Plaintiff's Counsel have expended more than 980 attorney hours for a lodestar of more than $523,000 and have incurred expenses of over $47,000. The services provided by Plaintiff's Counsel have included pre-suit investigation of the relevant facts and transactions; drafting of pleadings and discovery requests; research on the applicable law to formulate both litigation and negotiation strategies; conducting successful settlement negotiations with Defendants; review and analysis of voluminous and complex documents; interviewing certain high-ranking

officials of defendant SCOR; and communicating with Converium shareholders regarding the litigation and the proposed settlement. In Plaintiff's Counsel's view, all these efforts were necessary and reasonable in connection with the prosecution of the Action. At all relevant times, Plaintiff's Counsel coordinated their efforts to proceed as efficiently as possible and avoid unnecessary duplication of efforts.

57. Plaintiff's Counsel respectfully submit that the fee request is fair and reasonable, based on, among other things, the benefits obtained by the Class due to improvements to the terms of the transaction at issue, the prosecution of Plaintiff's claims on a fully contingent basis and the quality of the services rendered in pursuing and resolving the complex claims asserted by Plaintiff and his counsel, including the investigation and analysis of the underlying facts and successful negotiations with Defendants' Counsel with respect to the original and revised terms of the transaction.

58. Given the substantial benefits conferred through the efforts of Plaintiff's Counsel and the numerous litigation risks and complexities Plaintiff would have confronted had the case been prosecuted to trial as more fully delineated in the accompanying memorandum of law, we respectfully submit that the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court. Additionally, given the material benefits achieved and substantial services rendered by Plaintiff's Counsel, we respectfully submit that the requested award of attorneys' fees of $500,000 and reimbursement of $47,473.13 in expenses incurred in connection with the Settlement is both fair and reasonable and fully merits the Court's approval.

59.     No compensation in any form has passed directly or indirectly from any of the Defendants to the Plaintiff or Plaintiff's attorneys.  In addition, with the exception of Plaintiff's Counsel's fee application (as yet to be determined and awarded by the Court), no promise to give any such compensation has been made.  In addition, Plaintiff's Counsel have not made and will not make, and Plaintiff has not received and will not receive, any payments for serving as a representative party on behalf of the Class.

Executed this 4th day of February, 2008.

                          Respectfully Submitted,

**RIGRODSKY & LONG, P.A.**

By:   s/Seth D. Rigrodsky
     Seth D. Rigrodsky (SR-9430)
     Brian D. Long
     919 N. Market Street, Suite 980
     Wilmington, DE  19803
     Telephone:  (302) 295-5310
     Facsimile:  (302) 654-7530

**RIGRODSKY & LONG, P.A.**

By:   s/Joseph H. Weiss
     Joseph H. Weiss (JW-4534)
     James E. Tullman (JT-9597)
     David C. Katz (DK-6235)
     551 Fifth Avenue
     New York, NY  10176
     Telephone:  (212) 682-3025
     Facsimile:  (212) 682-3010

*Counsel for Plaintiff and the Class*