# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEIL L. SCLATER-BOOTH, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| SCOR, S.A., and PATINEX AG, | ) ) |
| Defendants, | ) ) ) |

CIVIL ACTION NO.

**07 CV 3476**

RECEIVED
MAY 0 1 2007
U.S.D.C. S.D. N.Y.
CASHIERS

**CLASS ACTION COMPLAINT**

Plaintiff Neil L. Sclater-Booth ("Plaintiff"), by his attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.      This is a class action brought on behalf of Plaintiff, holders of the registered shares of Converium Holding AG ("Converium" or the "Company") resident in the United States and holders of the Company's American Depository Shares (or "ADSs") against defendants SCOR, S.A. ("SCOR") and Patinex AG ("Patinex"), alleging violations of the United States Securities and Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §§78m(d), 78n(d) and 78n(e).  Plaintiff and the class seek immediate injunctive relief against defendants in connection with an unlawful plan to acquire the Company by means of a hostile takeover tender offer.

2.      On April 5, 2007, SCOR announced its offer to purchase all registered shares of Converium (the "Offer"), from which it is excluding all U.S. persons holding shares

1

of Converium, as well as holders of the Company's ADSs. Unless SCOR extends the Offer to Converium's U.S. securities holders on terms equal to those being offered to non-US securities holders as required under Rule 14d-10 of the Williams Act, SCOR should be prohibited from taking any steps to effectuate the Offer.

3.    In filings made before the Swiss Takeover Board, the Swiss agency with regulatory authority over the Offer, SCOR admitted through its counsel that, among other things, it refused to comply with the requirements of the Williams Act due to cost concerns and the possibility of shareholder litigation.

4.    Despite triggering application of the Williams Act, SCOR has ignored its obligations to file the required tender offer statement concerning the Offer and other information concerning the Offer under the federal securities laws.

5.    SCOR has claimed that since it is not tendering for shares held by U.S. shareholders it is free to ignore the Williams Act. Such conduct violates Rule 14d-10 of the Exchange Act, which provides that no bidder can make a tender offer unless "[t]he tender offer is open to all security holders of the class of securities subject to the tender offer." Even in multi-national offers, Rule 14d-1 makes it plain that offers to U.S. holders must be made "on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offers."

6.    In fact, the Swiss Takeover Board recently ruled that applying Swiss law, "[a] public takeover bid – including that of the Bidder [SCOR] must apply to *all* the Target Company's *listed stakeholdings* . . . " (Emphasis in Original). The Swiss Takeover Board continued, that "[a] bidder is therefore obliged, despite using possible so-called Sales Restrictions or Offer Restrictions, to accept shares which are offered by people who are not

allowed to be told of the offer according to U.S. law unless it complies with the corresponding U.S. regulations."

7.     SCOR and Patinex also failed to make the requisite disclosures pursuant to Section 13(d) of the Exchange Act and Rule 13d-1 promulgated thereunder (which obligates owners of greater than 5% blocks of shares to disclose to shareholders the nature and purpose of their ownership interests). On February 21, 2007, SCOR filed a Schedule 13D that disclosed for the first time that it had contracted to purchase 19.8% of Converium's outstanding shares held by Patinex pursuant to a share purchase agreement (the "Patinex SPA"), as well as 4.8% of Converium's outstanding shares held by Swedish company, Alecta pensionsforsakring ("Alecta"), pursuant to a separate share purchase agreement (the "Alecta SPA"), and that, separate and apart from these arrangements, SCOR had already acquired 8.3% of the outstanding shares of Converium through open market purchases. SCOR's Schedule 13D filing stated that it purchased 8.3% of Converium's outstanding shares beginning in November 2006.

8.     Absent injunctive relief, SCOR and Patinex threaten to take control of the Company without adequate disclosure under Sections 14(d) and 13(d) of the Exchange Act.

9.     The declaratory and injunctive relief sought herein is necessary to provide Plaintiff and the Class an opportunity to evaluate whether Converium's shareholders should tender into the Offer and to provide them all the material information about the Offer and SCOR to which they are entitled under the securities laws. Absent such relief, there is a substantial likelihood that Plaintiff and the Class will be irreparably harmed. Plaintiff and the Class will be forced to take action (such as selling their shares or shares represented by ADSs

prior to the completion of the Offer) that they would not otherwise take with the benefit of accurate information

10.     The relief requested in this Action is especially necessary because the Company has announced its opposition to the Offer and has filed a lawsuit in this District to enjoin SCOR and Patinex from continuing to violate the federal securities laws in the manner set forth herein.

11.     On April 13, 2007, the Company filed a Form 14D-9 with the SEC.  In that filing, the Company strongly recommended that Converium's securities holders not tender into the Offer:

> After careful consideration, including a thorough review of the Offer with the DSC (as defined below), as well as with the Company's executive officers and independent financial and legal advisors, *the Board of Directors unanimously determined on April 12, 2007 that the unsolicited Offer fundamentally fails to recognize the full value of Converium's franchise and growth prospects and carries significant business, integration and execution risks and, therefore, is not in the best interest of Converium, its shareholders or its customers.* Converium's management and the Board of Directors believe that Converium can deliver more value to its shareholders with fewer execution risks than the proposed Offer, by continuing to deliver consistency and continuity under its existing business model, i.e., as an international multi-line reinsurer with geographic emphasis on Europe, Asia-Pacific, Central & South America and the Middle East, and a focus on global specialty lines. (Emphasis added).

12.     Until (i) SCOR complies in full with Rule 14d-10 and extends the Offer on equal terms to Plaintiff and the Class; (ii) SCOR files a Schedule TO under Rule 14d-3; (iii) SCOR files a registration statement and prospectus under the Securities Act (governing the securities that SCOR is intending to offer to Converium's shareholders); and (iv) SCOR and Patinex make accurate material disclosures concerning the acquisition of their ownership interests, under Section 13(d) of the Exchange Act, SCOR and PATINEX should be enjoined from taking any further actions in connection with the Offer.

**JURISDICTION AND VENUE**

13.    The claims asserted herein arise under Sections 13(d), 14(d) and 14(e) of the Exchange Act (15 U.S.C §§ 78m(d), 78n(d) and 78n(e)) and the Securities and Exchange Commission ("SEC") rules and regulations promulgated thereunder.

14.    In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market. Plaintiff is, and was at all relevant times, the owner of Converium ADSs.

15.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This court has jurisdiction over the action pursuant to the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331 (federal question).

16.    Venue is proper in this judicial district pursuant to the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391. One or more of the acts and transactions complained of herein have occurred, are occurring, and unless enjoined, will continue to occur in this judicial district.

17.    This Court has personal jurisdiction over defendants based, among other things, upon the SEC filings complained of herein and the trading of SCOR's ADSs upon the New York Stock Exchange. SCOR has designated an agent for service of process in New York. Furthermore, PATINEX has made a number of regulatory filings with the insurance departments of New Jersey, Connecticut and California.

**THE PARTIES**

18.    Plaintiff Neil L. Sclater-Booth purchased Converium ADSs as described in the attached certification and was damaged thereby.

19.    Shares of Converium's common stock are registered under Section 12(b) of the Exchange Act, and listed on the SWX Swiss Exchange. In addition, Converium's ADSs are traded on the New York Stock Exchange under the ticker symbol "CHR."

20.    Defendant SCOR is a corporation organized and existing under the laws of France with its principal place of business located at 1, avenue du General de Gaulle, 92 800 Puteaux, France. SCOR's principal business is to provide (directly or through its consolidated subsidiaries) Life and Non-Life reinsurance services, as well as direct insurance services. SCOR is a foreign private issuer as defined in Rule 3b-4(c) under the Exchange Act. SCOR's ordinary shares are registered under Section 12(b) of the Exchange Act, and its ADSs are listed on the New York Stock Exchange under the ticker symbol "SCO." SCOR is a global reinsurance business that in 2006 generated approximately 25% of its gross premiums in North America through its 100% owned United States subsidiaries, including SCOR Reinsurance Company which is located in this District.

21.    Defendant Patinex is a corporation organized and existing under the laws of Switzerland and has its principal place of business located at Egglirain 24, 8832 Wilen, Switzerland.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23, on behalf of himself, all ADS holders, and all U.S. holders of Converium registered shares (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants. This action is properly maintainable as a class action.

23.    The Class is so numerous that joinder of all members is impracticable. As of March 22, 2007, there were approximately 10,894,430 ADSs outstanding and over

6

146,000,000 million registered shares of Converium outstanding. U.S. investors own collectively approximately 22% of Converium's ADSs and shares.

24.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class members. The common questions include, inter alia, the following: (a) whether defendants violated the federal securities laws in connection with their failure to comply with the filing, notice and informational requirements of the federal securities laws in connection with the Offer; and (b) whether Plaintiff and the other members of the Class would be irreparably damaged.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

27.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**BACKGROUND**

**Defendants Fail to Make Schedule 13D Filings With The SEC**

28.     In December 2005, Patinex notified Converium in a Swiss filing that it had acquired 12.49% of the voting rights in the Company. 5.06% of the voting rights were in the form of 7,425,000 registered shares, and 7.43% were in the form of purchase rights with an entitlement to purchase 10,900,000 registered shares.

29.     In connection with the acquisition, Patinex sought an exemption from various state insurance departments (New Jersey, Connecticut and California), whose approval is ordinarily required when there are changes in the ownership structure of an insurance company. In order to obtain a state insurance regulatory exemption from such an approval, Patinex represented that its investment was not being made for the purpose of changing or influencing the ultimate control of Converium. However, in granting the requested approval, at least one state insurance department required Patinex to file *another* exemption request should its ownership position exceed 15%. Prior to February 2007, Patinex's ownership position actually exceeded 15%.

30.     Between December 2005 and the present, Patinex increased its holdings from 12.49% to 19.8% of the outstanding shares of the Company. Between November 2006 and February 16, 2007, SCOR purchased 8.3% of Converium's registered shares through open market purchases. On January 24, 2007, SCOR and Patinex entered into a confidentiality agreement and had formed a "group" for Schedule 13D reporting purposes. Prior to February 21, 2007, however, SCOR failed to file the requisite Schedule 13D. Patinex has not filed a Schedule 13D.

**B.    The Share Purchase Agreement**

31.     On February 21, 2007, SCOR filed a Schedule 13D. That filing revealed that on February 16, 2007, Patinex and SCOR had entered into the Patinex SPA. The

8

Patinex SPA provides that Patinex would sell its Converium shares and warrants to SCOR for CHF 121,885,470, plus 14,331,037 newly issued SCOR shares.

32.    The transfer of shares contemplated by the Patinex SPA is scheduled to close after all regulatory approvals have been obtained. According to SCOR's public filings, those approvals are likely to be obtained in April 2007.

33.    SCOR's February 21, 2007, filing noted that SCOR had entered into a purchase agreement with Alecta pursuant to which SCOR agreed to acquire an additional 7,100,000 shares.

34.    SCOR's Schedule 13D revealed that, after giving effect to the share purchase agreements with Patinex and Alecta, SCOR would have beneficial ownership of 32.9% of Converium's issued share capital.

C.    The Offer

35.    On February 17, 2007, SCOR proposed an offer for the acquisition of the Company to the Converium Board of Directors.

36.    On February 18, 2007, the Converium Board unanimously rejected the offer, concluding that it fundamentally failed to recognize the value of Converium's franchise and growth prospects, and it was, therefore, not in the interest of Converium, its shareholders, and its customers.

37.    On February 26, 2007, SCOR issued a formal pre-announcement of the Offer indicating that it intended to launch a public tender offer on or about April 2, 2007, for all of Converium's shares. On April 5, 2007, SCOR issued a Swiss offer prospectus announcing the Offer (the "Offer Prospectus"). The Offer Prospectus states in relevant part that:

- SCOR currently holds 12,200,000 Converium shares and has entered into share purchase agreements with two of Converium's largest shareholders, Patinex and Alecta, to purchase an aggregate of 36,120,350 additional shares.

- SCOR intends to offer for each Converium share 0.5 SCOR shares with a nominal value of EUR 7.8769723 per share, as well as CHF 4 in cash.

- The Offer would not apply to the Company's ADSs.

- SCOR's Offer would be subject to a number of conditions, including valid acceptances for shares representing at least 50.01% of the Company's share capital.

- The Offer would not be made in or into the United States and would only be accepted outside of the United States.

38.     The Offer Prospectus indicates that the Offer period will run from April 23, 2007 to May 22, 2007, subject to extension. According to SCOR's press release dated April 23, 2007, the Offer will remain open for acceptance from May 8, 2007 until June 6, 2007, 4:00 p.m. CET, subject to extensions in accordance with the provisions of the Offer Prospectus.

39.     SCOR's Offer has received widespread media and analyst coverage in the US, with media outlets including *The Wall Street Journal* and *The Daily Deal* running many stories on the proposed Offer. For instance, on February 27, 2007, *The Wall Street Journal* (US Edition) announced, "SCOR To Launch A Hostile Offer For Converium," citing to the Offer's pre-announcement. Also on February 27, 2007, *The Daily Deal* reported that "[a] week after its initial approach was rebuffed, French reinsurer Scor SA on Monday, Feb. 26, turned hostile with a Sfr3.1 billion ($2.5 billion) offer for Swiss peer Converium Holding AG." On March 1, 2007, *The Wall Street Journal* (US Edition) reported that "Converium Woos Shareholders," pointing to SCOR's hostile takeover proposal. On March 28, 2007, *The Wall Street Journal* reported that "French reinsurer Scor plans to launch a hostile tender offer for Swiss rival Converium Holding next month to gain more market power and broaden its risk portfolio."

10

40.    Confirming that Patinex and SCOR are, and have been, acting as a group, Patinex CEO Martin Ebner ("Ebner") discussed his decision to sell Converium shares to SCOR in the media, stating that he strongly endorsed control of Converium being transferred to SCOR:

> Converium will obtain critical mass by the merger. The merger with SCOR is an almost ideal solution for Converium's shareholders. SCOR will pay Converium shareholders a relatively high premium. SCOR is nevertheless prepared to include the whole of Converium's management into the new entity. The combination will result in the new company being the fifth largest global reinsurer. (interview in Swiss weekly newspaper dated February 27, 2007)

41.    Despite its undoubted desire to induce Converium's U.S. shareholders to tender into the Offer, SCOR has attempted to justify its exclusion of U.S. shareholders from the Offer to the Swiss regulatory authorities. As the Swiss Takeover Board recently ruled on April 20, 2007, under Swiss law, SCOR must treat all Converium shareholders equally.

42.    In a Memorandum to the Swiss Takeover Board dated March 9, 2007, SCOR argued that "[i]f the Offer is not extended into the US, Converium shareholders may nonetheless find ways to participate in the Offer" and pointed to the "widely-known practice of sophisticated U.S. investors finding ways to participate in foreign tender offers through foreign intermediaries." SCOR made similar arguments in a Memorandum to the Swiss Takeover Board dated March 23, 2007.

43.    SCOR's decision to exclude U.S. shareholders from the Offer violates Rule 14d-10. Rule 14d-10 states that no bidder "shall make a tender offer unless ... [t]he tender offer is open to all security holders of the class of securities subject to the tender offer; . . . and [t]he consideration paid to any security holder for securities tendered in the tender offer is the highest consideration paid to any other security holder for securities tendered in the tender offer."

11

44.    The provisions of Rule 14d-10 apply to international offers like the Offer. A foreign bidder such as SCOR "may separate the offer into two offers: one offer made only to U.S. holders and another offer made only to non-U.S. holders." But in such offers, "[t]he offer to U.S. holders must be made on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offers." *See* Rule 14d-1(d)(2)(ii). Here, SCOR has ignored the law.

45.    On April 13, 2007, Converium also filed a Schedule 14D-9 under the Williams Act disclosing why the Converium Board believed the Offer was not in the best interests of shareholders. Among other reasons, the Board stated that it was opposed to the Offer because: (a) the Offer was opportunistically timed; (b) the Offer undervalues Converium; (c) the Offer does not reflect the long-term value of Converium's strategic plan; (d) the Offer carries significant business, integration and execution risks; (e) there is substantial question as to whether the combined entity will be able to deliver stronger, sustainable profitable growth; (f) consummation of the Offer poses business disruption risks; and (g) the Offer unfairly excludes an important part of Converium's shareholder base.

### FIRST CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

#### Violation of Section 13(d) of the Exchange Act

46.    Plaintiff repeats and realleges each of the above paragraphs as if fully set forth herein.

47.    Section 13(d) of the Exchange Act and Rule 13d-1 promulgated thereunder requires a group that has acquired, directly or indirectly, beneficial ownership of more than 5% of a class of a registered equity security, to file a statement with the SEC, disclosing, *inter alia*, the identity of its members and the purpose of its acquisition. This

12

statement must also be transmitted to the issuer of the security and to each exchange on which the security is traded. Under Section 13(d), a group is defined as an aggregation of persons or entities who "act ... for the purpose of acquiring, holding or disposing of securities..." such that the members are combined in furtherance of a common objective. 15 U.S.C. § 78m(d)(3).

48.    Patinex and SCOR have acted as a group because they have combined to acquire, hold or dispose of securities of Converium. That group was formed at least as early as November 2006 when SCOR began purchasing shares of Converium in open market purchases. Patinex likewise increased its Converium ownership from 12.5% to 19.8% between December 2005 and February 16, 2007. The Patinex-SCOR group has a common plan or purpose, to wit, a transfer of control of Converium to SCOR, and has coordinated its trading to accomplish that goal. Indeed, SCOR and Patinex entered into a confidentiality agreement on January 24, 2007 and SCOR was buying Converium shares in open market purchases in the same time frame. However, neither Patinex nor SCOR, who have clearly communicated about the future of Converium, have filed a Schedule 13D disclosing in full the circumstances surrounding (i) when Patinex and SCOR first communicated concerning Converium, and the substance of such communications, (ii) the relationship between SCOR and Patinex, (iii) the formation of the Patinex-SCOR group, and (iv) Patinex's increase in its ownership of Converium and its relationship to SCOR's transactions in Converium shares.

49.    While SCOR filed a Schedule 13D on February 21, 2007 disclosing the existence of the Patinex SPA, Patinex has not made a single U.S. securities filing. As of February 15, 2007, Patinex beneficially owned approximately 19.8% of the total outstanding shares of Converium. Patinex appears to have increased its ownership position from 12.5% to 19.8% by early 2007.

50.    A Schedule 13D filing by Patinex would require disclosure of, among other things: (1) the number of equity securities that Patinex had acquired or has a right to acquire "directly or indirectly;" (2) "information as to any contracts, arrangements, or understandings with any person with respect to any securities of Converium; (3) the "purpose of the purchases", including whether Patinex has any "plans or proposals" concerning "[a]n extraordinary corporate transaction" or "change in the present board of directors or management;" and (4) the financing arrangements Patinex made for the purchases, including a "description of the transaction." 15 U.S.C. § 78m(d)(1); 17 C.F.R. §§ 240.13d-1, 240.13d-101.

51.    Patinex's share ownership plainly exceeded the five percent ownership threshold set forth in Rule 13d-1(a), obligating Patinex to file a Schedule 13D with the SEC within 10 days after such time as Patinex exceeded this ownership threshold. Patinex has deprived Plaintiff and the Class of the material information that they are entitled to receive. Plaintiff and the Class have been, are being, and unless relief is granted by this Court, will continue to be, irreparably injured in that they are without the material information to which they are lawfully entitled.

52.    Patinex and SCOR are obligated to correct the foregoing material omissions so that Plaintiff and the Class have a full and accurate understanding of SCOR's and Patinex's actions and intentions as soon as possible. Absent such a correction and appropriate interim relief, Plaintiff and the Class will be irreparably harmed.

53.    Plaintiff has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF

### Violation of Sections 14(d) of the Exchange Act (Against SCOR)

54.    Plaintiff repeats and realleges each of the above as if fully set forth herein.

14

55.    Section 14(d)(1) of the Exchange Act makes it unlawful for any person or company "directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise" to make a tender offer unless such person or company has filed with the SEC "a statement containing such of the information specified in section 13(d) of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(d)(1). Pursuant to Section 14(d), Rule 14d-6(d) requires a "bidder" to file a Schedule to disclose this material information. Bidder" is defined in Rule 14d-1(g)(2) as "any person who makes a tender offer or on whose behalf a tender offer is made." 17 C.F.R. §§ 240.14d-6, 240.14d-1.

56    SEC rules and regulations promulgated pursuant to Section 14(d) describe in detail the materials that must be included in a tender offer solicitation, registration statement or prospectus, including a Schedule TO and Form F-4. SEC rules and regulations expressly require that bidders make complete and accurate disclosure of, among other things:

(a)    "The reasons for engaging in the transaction," 17 C.F.R. § 229.1004(a)(2)(III); Form F-4, Item 4(a)(2), and "the purposes of the transaction," 17 C.F.R. § 229.1006(a);

(b)    Pro forma financial information reflecting the impact of the transaction on the company, 17 C.F.R. § 229.1010(b), as well as any adjustments attributable to the transaction, 17 C.F.R. § 210.11-02(b)(6) and Item 5 of Form F-4;

(c)    Pro forma financial information required by Regulation S-X, 17 C.F.R. § 210.11-02(b)(6) and Item 5 of Form F-4;

(d)    A description of the accounting treatment of the transaction, Item

15

4(a)(5) of Form F-4;

(e)     A description of any material litigation, Item 8.A.7 of Form 20-F; and

(f)     A discussion of the most significant risk factors that make the transaction speculative or risky, Item 3 of Form F-4 and 17 C.F.R. § 229.503(c).

57.     In addition to these specific requirements, a bidder must "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading." 17 C.F.R. § 229.1011(b)

58.     Disclosure of the identity and background of each "bidder" is intended to give tendering shareholders information regarding the offeror's management to provide the shareholders with a basis for determining whether to hold, sell or tender all or part of their shares in response to the offer.

59.     SCOR has stated in the Offer pre-announcement and Offer Prospectus that it is excluding U.S. persons from the Offer. SCOR has failed to file materials pursuant to a Schedule TO and has failed to make the substantive disclosures that are required under Section 14(d) and the SEC rules promulgated thereunder. However, given (a) the size of Converium's U.S. shareholder base, (b) the fact that both SCOR and Converium have securities listed on the New York Stock Exchange, (c) that SCOR has candidly admitted that U.S. persons will tender into the Offer and (d) that the Offer has generated widespread media and analyst publicity in the United States, SCOR has triggered the requirements under Section 14(d)(1) and the rules promulgated thereunder to file tender offer materials under the federal securities laws.

60.     SCOR's efforts to _evade_ United States securities laws while at the same time recognizing that U.S. persons can -- and will -- take advantage of the Offer as detailed in the

16

Exclusion Memoranda, confirm SCOR's improper efforts to secure the participation of U.S. persons while avoiding protections afforded to U.S. investors by the Exchange Act.

61.     Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Violation of Section 14(e) of the Exchange Act (Against SCOR)

62.     Plaintiff repeats and realleges each of the above as if fully set forth herein.

63.     Section 14(e) of the Exchange Act proscribes untrue statements of material fact or omissions of material fact made in connection with tender offers. It is unlawful for any person or company to "make any untrue statement of material fact or omit to state any material fact necessary in order to make the statements ... not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices" in connection with a tender offer.

64.     SCOR's failure to disclose all of the material information that is required by a Schedule TO and the rules promulgated under Section 14(d) of the Exchange Act constitutes an omission of material fact necessary to make the statements in its Schedule 13D and Offer Prospectus not misleading.  In omitting materials required to be filed under a Schedule TO while commencing an Offer for a company, over 20% of whose shares are held by U.S. persons, SCOR is engaging in fraudulent, deceptive, or manipulative acts in connection with a tender offer.

65.     SCOR's scheme to exclude U.S. persons from the Offer in order to avoid the disclosure, filing and registration obligations under the Exchange Act and the Securities Act violates Rule 14d-10, which requires that all security holders be subject to "equal treatment." SCOR's scheme to avoid application of Rule 14d-10 is itself a fraudulent, deceptive and manipulative act or practice.

66.    SCOR has also violated Section 14(e) of the Exchange Act because, as set forth above, it has failed to disclose the true circumstances surrounding its and Patinex's acquisition of Converium shares and its relationship with Patinex in connection therewith. SCOR has made no disclosure surrounding the formation of the Patinex-SCOR group, no disclosure of when Patinex increased its ownership in Converium, no disclosure of when Patinex and SCOR first communicated concerning Converium, nor the substance of communications between SCOR and Patinex.

67.    SCOR's statements of fact and/or omissions of material fact were made knowingly and deliberately in order to deceive Plaintiff and the Class about the Offer and the true circumstances surrounding the plan to acquire control of Converium without making the required disclosures under the federal securities laws.

## DECLARATORY AND INJUNCTIVE RELIEF

68.    Plaintiff repeats and alleges each of the above Paragraphs as if fully set forth herein.

69.    The Court may grant the declaratory and injunctive relief sought herein pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and 65. A substantial controversy exists because defendants are committing flagrant violations of the federal securities laws during an Offer for control of the Company.

70.    Unless relief is issued, as a result of their violations of federal securities laws, defendants may succeed in taking control of the Company without shareholders having the opportunity to evaluate the options before them in a fair and even-handed manner.

71.    Injunctive and declaratory relief is required, *inter alia,* (a) declaring violations of Sections 13(d), 14(d) and 14(e) of the federal securities laws, and (b) prohibiting

18

all further action in connection with the Offer, including taking down any registered shares tendered in the Offer, including purchasing shares pursuant to the Patinex SPA, until (i) SCOR complies in full with Rule 14d-10 and extends the Offer on equal terms to all Converium shareholders – U.S. persons (including ADS holders) and non-U.S. persons, (ii) SCOR files a registration statement and prospectus under the Securities Act, and a Schedule TO that complies in full with the requirements of Section 14(d) of the Exchange Act, and (iii) all corrective disclosures are made by SCOR and Patinex, including the filing of a Schedule 13D, truthfully and accurately disclosing the arrangements between SCOR and Patinex regarding their purchase of Converium securities.

72.    Plaintiff and the Class face the prospect of immediate, severe and irreparable injury should SCOR be permitted to proceed with its Offer where Converium's shareholders have been unlawfully excluded from the Offer, material information has been omitted and U.S. security holders have been denied the opportunity to evaluate all of the material information that Section 14(d), 13(d) of the Exchange Act entitle them to receive. If the requested relief is not granted prior to the end of the offer period (currently scheduled to be June 6, 2007), defendants may succeed in seizing control of the Company without having made the necessary disclosures under the federal securities laws.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment against defendants and in favor of Plaintiff, and that the Court issue an Order:

(a)    Declaring that defendants have violated Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 and the rules promulgated thereunder;

(b)    Preliminarily and permanently enjoining defendants from taking any further action, including the acquisition of additional shares or taking down any registered shares tendered by Converium's shareholders in the proposed Offer, until (i) SCOR complies in full with Rule 14d-10 and extends the Offer on equal terms to all Converium shareholders – U.S.

19

persons (including ADS holders) and non-US persons, (ii) a registration statement and prospectus is filed under the Securities Act, (iii) a Schedule TO is filed that complies with Section 14(d) of the Exchange Act, and (iv) a Schedule 13D is filed by Patinex and SCOR making prompt and accurate disclosures, and that such injunction be maintained for an additional period of at least 20 days following such corrective disclosure and filing;

      (c)    Enjoining defendants and their agents and employees, preliminarily and permanently, from further violating Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 and the rules promulgated thereunder;

      (d)    Requiring defendants to comply with Section 13(d) of the Exchange Act and the rules thereunder by filing an accurate statement on Schedule 13D;

      (e)    Awarding Plaintiff the costs and disbursements of this action, together with reasonable attorneys' and expert' fees; and

      (f)    Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: May 1, 2007

**WEISS & LURIE**

By: _____
Joseph H. Weiss (JW-4534)
Jack I. Zwick (JZ-2514)
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 682-3025
Facsimile: (212) 682-3010

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky (SR-9430)
Brian D. Long
919 N. Market Street, Suite 980
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

NEIL BOOTH ("Plaintiff"), hereby certifies as follows:

1.    I have reviewed the complaint being filed on my behalf and on behalf of all others similarly situated and authorized its filing.

2.    I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    To the best of my current knowledge, I purchased and hold the following shares of Converium Holding AG:

| Date | Purchased or Sold | No. of Shares | Price per Share |
|------|-------------------|---------------|-----------------|
| 12-1-04 | Purchased | 1500 | 4.69 |
| 9-12-05 | " | 1500 | 4.80 |

5.    I have not served as a class representative in a federal securities case in the last three years.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7.    The matters stated in this certification are true to the best of my current knowledge, information and belief.

8.    I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED:    April 30, 2007

_____
NEIL BOOTH